UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-50-B-W |
| | ) | |
| DANIEL POULIN | ) | |

**ORDER ON DEFENDANT'S MOTIONS TO DISMISS INSOFAR AS THE STATUTE UPON WHICH THE INDICTMENT IS PREDICATED IS UNCONSTITUTIONAL AS APPLIED AGAINST DEFENDANT AND INSOFAR AS THE PRODUCTION OF PRIVATE AND PERSONAL VIDEO IMAGES, NOT INTENDED FOR DISTRIBUTION IS PROTECTED UNDER THE FIRST AMENDMENT**

Charged with production of child pornography, Daniel Poulin raises two constitutional challenges to the Indictment.  First, he says that the statute upon which the Indictment is based, 18 U.S.C. § 2251(a), is unconstitutional as applied to him, because even though he is alleged to have produced pornographic images of a minor, there is no allegation that he intended to distribute or disseminate those images and, therefore, the statute violates the Commerce Clause. Second, he says § 2251(a) is unconstitutional, because in criminalizing the production of child pornography without requiring that it be produced for distribution or dissemination, the statute infringes upon his exercise of First Amendment rights.  The Court rejects the first motion to dismiss, because to resolve the as applied challenge would require the resolution of facts that are intertwined with the facts underlying the criminal charge itself.  The Court rejects the second motion to dismiss, because the Defendant does not have a First Amendment right to produce child pornography, even if he did not intend to distribute it.

## I.    STATEMENT OF FACTS

On March 12, 2008, a federal grand jury indicted Daniel Poulin for production of child pornography in violation of 18 U.S.C. § 2251(a).  Specifically, the Indictment alleges:

> That between a date unknown but no later than November 1, 2001, and continuing until no later than November 10, 2004, in the District of Maine, Defendant Daniel Poulin used a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. The visual depictions were produced using materials that had been mailed, shipped and transported in interstate and foreign commerce.

*Indictment* (Docket # 1). In his first motion to dismiss, Mr. Poulin says the Government claims that he "surreptitiously taped his then-girlfriend's daughter . . . in various stages of undress in a bathroom in premises which the parties shared," and contends that the Indictment mischaracterizes his alleged conduct as the production of child pornography. *Def.'s Mot. to Dismiss Insofar as the Statute upon which the Indictment is Predicated is Unconstitutional as Applied Against Def.* at 1 (Docket # 23) (*Def.'s As Applied Mot.*). Mr. Poulin emphasizes that the images were produced for viewing by no one other than himself; they were not intended for dissemination, distribution, or any commercial purpose; and, they were in fact never disseminated, distributed, or used for any commercial purpose. *Id.* at 1-2. He says the Indictment represents "an over-charged effort to federalize (Maine state) misdemeanor violations of privacy." *Id.* at 2.

In his second motion to dismiss, Mr. Poulin relies on *New York v. Ferber*, the Supreme Court case that first addressed a First Amendment challenge to child pornography offenses and upheld a New York statute that criminalized the distribution of child pornography. 458 U.S. 747 (1982). Mr. Poulin contends that *Ferber* did not strip of First Amendment protection all production and possession of child pornography. *Def.'s Mot. to Dismiss the Indictment Insofar as the Production of Private and Personal Video Images, Not Intended for Distribution is Protected Under the First Amendment* at 2-3 (Docket # 25) (*Def.'s First Amendment Mot.*). Reasoning that *Ferber* was predicated on the assumption that the pornography was either actually distributed or intended for distribution, Mr. Poulin argues that the First Amendment

2

prevents criminal prosecution of producers and possessors of child pornography, except where "the involved pornography was *distributed*, or was intended for *distribution*." *Id.* at 2 (emphasis in original). Mr. Poulin concludes that because he never intended to distribute the video images of his girlfriend's daughter, he is being prosecuted in violation of his First Amendment rights.

## II. DISCUSSION

### A. The Motions to Dismiss

In returning an indictment, a grand jury is carrying out a constitutional function enshrined in the Bill of Rights. U.S. CONST. amend. V (stating that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury"). Unlike civil actions, a criminal action, particularly one initiated by indictment, is not generally subject to dispositive pretrial motion practice. *United States v. DiTomasso*, 552 F. Supp. 2d 233, 238 (D.R.I. 2008) (stating that "[a] motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only toward the sufficiency of the indictment to charge an offense"). Whether the issues in Mr. Poulin's motions to dismiss may or must be raised pretrial, they are still subject to Rule 12(b)(2)'s requirement that the court must be able to determine the defense, objection, or request "without a trial of the general issue."[1] Fed. R. Crim. P. 12(b)(2). This phrase imposes a significant constraint.

As the Supreme Court explained in *United States v. Covington*, a defense is capable of determination without a trial of the general issue "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." 395

---

[1] Rule 12(b) describes pretrial motions that are allowed; the Rule "establishes two classes of such motions, those which may be raised before trial and those which must be so raised." *United States v. Barletta*, 644 F.2d 50, 54 (1st Cir. 1981); Fed. R. Crim. P. 12(b)(2)-(3). Rule 12(b)(3) requires certain motions be made pretrial. Fed. R. Crim. P. 12(b)(3). Failure to raise a defense, objection, or request that must be raised by pretrial motion before the motion deadline results in waiver, absent good cause for relief from the waiver. Fed. R. Crim. P. 12(e). Because Mr. Poulin has made his motions to dismiss the Indictment on constitutional grounds pretrial, there is no need to determine whether they are properly characterized as Rule 12(b)(3) motions, which must be made pretrial.

U.S. 57, 60 (1969); *United States v. Levesque*, 681 F.2d 75, 78 (1st Cir. 1982) (concluding, in a case where federal jurisdiction depended on situs, that situs was "a jurisdictional fact susceptible of determination without reference to any of the facts involved in determining defendants' guilt or innocence"). Accordingly, "when a pretrial motion raises a question of fact that is intertwined with the issues on the merits, resolution of the question of fact thus raised must be deferred until trial." *United States v. Russell*, 919 F.2d 795, 797 (1st Cir. 1990).

Rule 12(b)(2) thus allows the Court to decide "a question of law presented in a case involving undisputed facts," *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005), but it requires that a motion to dismiss be denied if it relies on disputed facts. *Covington*, 395 U.S. at 60. In either case, the "allegations of the indictment must be taken as true." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Bohai Trading Co.*, 45 F.3d 577, 578 n.1 (1st Cir. 1995). Moreover, a court may receive evidence on a motion to dismiss in very limited circumstances. *See United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986) (stating that in ruling on a motion to dismiss an indictment on statute of limitations grounds, a court must accept as true "the allegations in the indictment and the unchallenged statement of proof of the prosecutor").

**B.    Motion to Dismiss and the As Applied Challenge**

The Court must dismiss the as applied motion to dismiss, since it relies on facts not alleged in the Indictment and those facts constitutionally require resolution by a jury. 1A Charles A. Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 194, at 439-40 (4th ed. 2008) (stating that "[a]lthough Rule 47 permits affidavits in support of motions, neither it nor Rule 12 was intended to permit 'speaking motions,' that is, motions that require consideration of facts outside the pleadings"). Mr. Poulin's motion depends on factual assertions about the

4

circumstances surrounding the offense that are interwoven with evidence about whether he committed the crime the Indictment has charged.[2]  *United States v. Szpyt*, No. 08-cr-54-P-S, 2008 U.S. Dist. LEXIS 89135, at *4 (D. Me. Oct. 31, 2008) (denying motions to dismiss because the defendants "ask[ed] the Court to determine factual issues typically reserved for the jury"). To be clear, the Court is not ruling on the merits of the motion; the Court is dismissing the motion without prejudice.  There may be an as applied constitutional challenge that could be resolved by a motion to dismiss, but this is not such a motion.[3]

### C.    The Motion to Dismiss and the First Amendment Challenge

Unlike the as applied motion to dismiss, Mr. Poulin's First Amendment motion to dismiss is susceptible to resolution based on the allegations in the Indictment alone.  Mr. Poulin argues that in *New York v. Ferber*, the Supreme Court held that the First Amendment protects production of child pornography so long as it is neither distributed nor intended for distribution. From this premise, Mr. Poulin reasons that the Indictment, which charges neither distribution nor intent to distribute, must be dismissed because it infringes upon his exercise of First Amendment rights.  This argument assumes, as it must, that the Government would be able to prove that the

---

[2] Rule 12(d) permits a court to defer ruling for "good cause" and there is authority for doing so where a constitutional question may be clarified by evidence at trial. Fed. R. Crim. P. 12(d); *United States v. Loften*, 518 F. Supp. 839, 856 (S.D.N.Y. 1981).  Nevertheless, it seems preferable to dismiss the motion to dismiss without prejudice, since a motion to dismiss that depends upon the resolution of facts at trial is a contradiction in terms.  It seems preferable to address any as applied constitutional challenge when the facts to which the law applies are either being or have been resolved.

[3] Mr. Poulin cites several appellate opinions that reach the merits of as applied challenges to § 2251(a), but in each case the defendant had already been convicted following trial or plea. *Def.'s As Applied Mot.* at 2 n.3 (citing *United States v. Morales-de Jesus*, 372 F.3d 6 (1st Cir. 2004) (rejecting as applied challenge following jury trial); *United States v. Holston*, 343 F.3d 83 (2d Cir. 2003) (rejecting as applied challenge following conditional guilty plea); *United States v. Galo*, 239 F.3d 572 (3d Cir. 2001) (same); *United States v. Buculei*, 262 F.3d 322 (4th Cir. 2001) (rejecting as applied challenge following jury trial)).  Neither do the cases Mr. Poulin cites in his Reply assist him. *Reply Mem. in Supp. of Def.'s Mot. to Dismiss Insofar as the Statute upon which the Indictment is Predicated is Unconstitutional as Applied Against Def.* at 3 (Docket # 46).  In both *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), and *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003), the defendants had entered conditional pleas of guilty and the circuit courts recited facts that were apparently derived from the pleas to discuss their constitutional challenges.  Moreover, *McCoy* has been overruled. *United States v. McCalla*, No. 07-50162, 2008 U.S. App. LEXIS 20231, at *14 (9th Cir. Sept. 24, 2008) (stating that "to the extent the reasoning employed in *McCoy* relied on the local nature of the activity, it has been overruled by the Supreme Court's decision in *Raich*") (referring to *Gonzales v. Raich*, 545 U.S. 1 (2005)).

images Mr. Poulin produced were in fact child pornography.  If this argument depended upon facts to be developed at trial, the Court would be precluded from reaching its merits for the same reasons it refused to resolve the as applied challenge.

The narrow question of law is whether the First Amendment protects production of child pornography that was neither intended for distribution nor actually distributed.  It is true, as Mr. Poulin observes, that *Ferber* contains language that addresses the First Amendment in the context of dissemination of child pornography.  458 U.S. at 752.  However, in *Ferber*, the defendant had challenged on First Amendment grounds his conviction under a state statute that criminalized the dissemination of child pornography, so the *Ferber* Court was merely discussing the First Amendment challenge in the specific context of the appeal.  In concluding that the dissemination of child pornography is not protected by the First Amendment, the Supreme Court did not declare that the First Amendment protects production of child pornography so long as it is not disseminated.  To the contrary, *Ferber* states:

> The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of the child.  That judgment, we think, easily passes muster under the First Amendment.

*Id.* at 758 (footnote omitted).  After reviewing the New York statute's detailed description of what constitutes sexual conduct, *Ferber* concluded that the statute sufficiently described "a category of material the *production* and distribution of which is not entitled to First Amendment protection."  *Id.* at 765 (emphasis supplied).  *Ferber* and the cases after *Ferber* do not rely solely on the distribution of child pornography as a justification for the absence of First Amendment protection.  To the contrary, these cases rely primarily on the need to protect children from being victimized by the "low-profile, clandestine" production of the material.  *Id.* at 760.

Criminalization of distribution is but a necessary corollary—"[t]he most expeditious if not the only practical method" of achieving that protection.  *Id.*

Ferber does require that "[a]s with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law."  *Id.* at 764.  Here, the federal statute criminalizes using any minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  18 U.S.C. § 2251(a).  The law incorporates a detailed description of "sexually explicit conduct."  18 U.S.C. § 2256(2)(A).[4]  Assuming that the Government can prove that Mr. Poulin produced images of a minor engaged in sexually explicit conduct, *Ferber* establishes that his activity is not entitled to First Amendment protection.

Finally, caselaw subsequent to *Ferber* has addressed and rejected arguments that the First Amendment protects the mere possession of child pornography without distribution.  In *Osborne v. Ohio*, the Supreme Court considered whether the possession of child pornography was entitled to the same First Amendment protections as the possession of obscene adult pornography.  495 U.S. 103 (1990).  *Osborne* followed *Stanley v. Georgia*, 394 U.S. 557 (1969), in which the Supreme Court struck down a Georgia statute that outlawed the private possession of obscene material.  *Osborne* recognized that Georgia's interest in banning the possession of obscene material, which it claimed poisoned the minds of adults, was comparatively weak when compared to Ohio's compelling interest in safeguarding children from exploitation by pornographers.  *Id.* at 109-10.  Thus, *Osborne* observed, it is "surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who

---

[4] The federal definition of "sexually explicit conduct" in § 2256(2)(A) is similar to the definition of "sexual conduct" in N.Y. Penal Law § 263.00(3) (McKinney 1980), which the *Ferber* Court accepted as a definition of unprotected speech.  *United States v. Frabizio*, 459 F.3d 80, 84 n.6 (1st Cir. 2006) (stating that "[t]he New York statute under consideration in *Ferber* defined 'sexual conduct' in terms almost identical to the definition of 'sexually explicit conduct' set forth in 18 U.S.C. § 2256(2)(A)").

possess and view the product, thereby decreasing demand." *Id.* Although *Osborne* discussed the need to "stamp out this vice at all levels in the distribution chain," *id.* at 110, the Court also described other legitimate reasons, not dependent upon distribution, for prohibiting possession of child pornography: child pornography's "continued existence causes the child victims continuing harm by haunting the children in years to come" and the ban on possession "encourages the possessors of these materials to destroy them." *Id.* at 111. *Osborne* concluded that "Ohio may constitutionally proscribe the possession and viewing of child pornography." *Id.* It is reasonable to conclude that if Ohio may constitutionally proscribe the possession of child pornography, the federal government may constitutionally proscribe its production.

First Circuit caselaw is consistent with this conclusion. In *United States v. Hilton*, the First Circuit unequivocally stated that "[t]he First Amendment does not protect obscenity, or the possession of child pornography produced using children." 386 F.3d 13, 16 (1st Cir. 2004) (citation omitted). In *United States v. Rodriguez-Pacheco*, the First Circuit observed that *Ferber* upheld the New York statute against First Amendment attack, "even though the statute prohibited material that would not be obscene, because the production of child pornography utilizing real children necessarily harmed the children." 475 F.3d 434, 440 (1st Cir. 2007) (footnote omitted); *Frabizio*, 459 F.3d at 83-86 (describing the harm to children from child pornography).

In view of the harm to children, the narrow tailoring of § 2251(a), and the absence of First Amendment protection for the production of child pornography, the Court concludes that the Indictment in this case withstands constitutional attack despite the fact there is no allegation that the Defendant either distributed or intended to distribute the child pornography he is alleged to have produced.

**III.     CONCLUSION**

The Court DISMISSES without prejudice Defendant's Motion to Dismiss Insofar as the Statute upon which the Indictment is Predicated is Unconstitutional as Applied Against Defendant (Docket # 23).  The Court DENIES Defendant's Motion to Dismiss the Indictment Insofar as the Production of Private and Personal Video Images, Not Intended for Distribution is Protected under the First Amendment (Docket # 25).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of November, 2008