UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-08-50-B-W |
| | ) | |
| DANIEL POULIN | ) | |

**ORDER ON MOTION FOR DISCOVERY**

Daniel Poulin requests orders authorizing depositions and personal inspection of equipment on which a state law enforcement agency recorded allegedly relevant telephone conversations, copies of which he already possesses. The Court grants his motion in part and denies it in part. Mr. Poulin has demonstrated that the recording equipment is in the Government's control, that it is material to the preparation of his defense, and that the Government must allow him access to it. However, he has failed to establish exceptional circumstances under which he may take the proposed depositions.

**I.     STATEMENT OF FACTS**

Daniel Poulin is charged with producing child pornography over a three-year period by surreptitiously videotaping his then-girlfriend's minor daughter while she used a bathroom she shared with her mother and Mr. Poulin. On October 31, 2008, Mr. Poulin moved for an order compelling the Government to allow access to original Exxacom[1] dispatch recordings of certain telephone calls to and from the Hancock County Sheriff's Office, and authorizing the pre-trial depositions of "Sony Electronic Corporation" and a Houston, Texas "spy shop". *Mot. for Disc.* (Docket # 33) (*Def.'s Mot.*). The Government objects to both requests on the primary ground

---

[1] Given the Government's apparent familiarity with this technology, the Court chooses its "Exxacom" spelling instead of Mr. Poulin's "Execom" spelling.

that neither has merit under the procedural rules governing discovery in criminal cases. *Gov't's Mem. in Opp'n to Def.'s Mot. for Disc.* (Docket # 47) (*Gov't's Opp'n*).

### A. The Exxacom Dispatch Recordings

The Hancock County Sheriff's Office, the investigating agency in Mr. Poulin's case, *Gov't's Opp'n* at 2, had a practice of recording telephone calls that came through its dispatch officer by using the so-called Exxacom recording system. Apparently, the Defendant; his then-girlfriend, Wendy R.; and the minor victim, Nicole R., each conversed with members of the Hancock County Sheriff's Office regarding this case, and their conversations were recorded by the Exxacom system. Mr. Poulin seeks access to the original recordings of these conversations, which he says "contain information extremely relevant to this prosecution including, *inter alia*, statements undercutting the Government's expected identification of the person captured in certain depictions in this case and the dating of certain depictions of Nicole R." *Def.'s Mot.* at 2. Mr. Poulin acknowledges that the Government has provided "5 analog tapes and 1 digital disk purporting to contain (certain of) [these] calls." *Id.* However, he says that his retained audio consultant "believes that the tapes and disk may include masked or deleted material and other improprieties which have rendered the material provided not co-extensive with the [Exxacom] recordings." *Id.* Mr. Poulin also complains that there are differences between the lengths of the calls as reflected in cellular telephone records and the lengths of the provided recordings and further that there are "dead spots" in the provided recordings. *Id.*

Mr. Poulin says that efforts to resolve these matters have been stymied by the Government's refusal to allow him unfettered access to the Exxacom system. *Id.* at 2-3. He claims that at one point, the Government reneged on an agreement to grant him access to the equipment, asserting that such access would improperly expose him to irrelevant and privileged

communications between non-parties and the Sheriff's Office. *Id.* at 3. Dissatisfied, he suggests that "dispatch calls are able to [be] called up by date and time," and that if an irrelevant call is interspersed among relevant calls, he is willing to have the irrelevant call muted or to leave the room for its duration. *Id.*

The Government objects and urges the Court to deny Mr. Poulin's request to listen to the original dispatch recordings. Adding background, the Government notes that Mr. Poulin has requested recordings of nearly 135 telephone calls, which include calls placed by the case agent to various witnesses, and calls placed from his home phone to the Hancock County Sheriff's Office, the Hancock County District Attorney's Office, and other law enforcement agencies. *Gov't's Opp'n* at 1. It says the "vast majority" of the calls were made by Mr. Poulin's former girlfriend, the mother of the victim in this case. *Id.* at 1. The Government points out that only nine of the calls were placed by Mr. Poulin himself.[2] *Id.*

Even though it believed it was obliged to disclose only those recordings of telephone calls in which Mr. Poulin participated, the Government nevertheless undertook to comply with his request. *Id.* at 1-4. First, the Government produced recordings of seven witness interviews, including an interview with the minor victim. *Id.* at 2. Then, the Government provided Mr. Poulin with copies of those telephone calls that the Exxacom system recorded when they were initially placed.[3] Although the original Exxacom system had been dismantled subsequent to the investigation in this case, and the Government had to arrange for its reassembly, ultimately the

---

[2] The Government's memorandum reads "[o]nly 19 nine [sic] of the calls were placed by Defendant himself." *Gov't's Opp'n* at 1. The Court assumes the lower figure is the correct one, since it is spelled out. If this is incorrect and the number is nineteen, the legal analysis is unchanged.

[3] The Government points out that among the nearly 135 conversations Mr. Poulin requested are conversations that the Exxacom system never recorded and cannot be produced, either because they never passed through the system, or because the dispatcher at the sheriff's office routed them to the District Attorney's Office. The Government includes in this category of irretrievable conversations those that were initially outside its control because they were placed (1) to the investigating officer at the district attorney's office or to his wireless phone, (2) to Mr. Poulin's home, or (3) to agencies outside its control, such as the Northeast Harbor Police Department. *Id.* at 2.

Government turned over five cassette tapes "containing approximately 65 of the calls Defendant had requested." *Id.* at 4. The Government explained that the dead spots and anomalous call lengths Mr. Poulin's audio consultant observed were caused by the Government's censoring of confidential, non-party conversations that were interspersed with requested conversations, and by editing of lengthy periods during which the caller was on hold. *Id.* at 3.

### B. Pre-trial Depositions

The Indictment charges that Mr. Poulin produced visual depictions of a minor engaged in sexually explicit conduct and that the "visual depictions were produced using materials that had been mailed, shipped and transported in interstate and foreign commerce." *Indictment* (Docket # 1). In his motion, Mr. Poulin states that "[t]he Government has prepared and submitted to the Defense an affidavit in this matter from Sony purporting to evaluate certain screen images relevant to an identification of the recording media at issue in this case." *Def.'s Mot.* at 3. Although the Defendant neither provided the affidavit nor explicitly states what it says, he claims it is "highly relevant," implying that the Sony affidavit addresses the interstate nexus portion of the Government's case. *Id.* at 3-4. He says the "Sony affidavit contains false information," and asks that the Court authorize "the pre-trial exploration of the circumstances surrounding the Sony affidavit." *Id.* at 4.

In addition, Mr. Poulin says that "the Government has identified a certain 'spy shop' so-called in Texas as the source of Defendant Poulin's surveillance equipment utilized in the creation of the (allegedly) pornographic depictions at issue in this prosecution." *Id.* He states that he "believes that the Government's information in certain material respects is incorrect." *Id.* He asks for permission to depose the Texas "spy-shop" for the same reasons he wants to depose Sony. *Id.*

Mr. Poulin goes on to say that he "is prepared to provide the Court for (its *in camera* review) further support for this request," but he is "reluctant to provide that information to the Government at this time insofar as same relates directly to the Defense's pre-trial and trial strategy." *Id.* at 4.

## II. DISCUSSION

### A. Access to the Exxacom Recordings

The Court construes Mr. Poulin's motion as essentially a request to confirm personally that the Government's reproductions are faithful to the original Exxacom recordings.[4] In opposition to this facially reasonable request, the Government contends that (1) it has no obligation to produce recordings of any conversations but Mr. Poulin's own, (2) Mr. Poulin's access to the Exxacom system will unnecessarily jeopardize the confidentiality of irrelevant information, (3) the time and effort required to police Mr. Poulin's personal access will outweigh the benefit, and (4) by being present and not objecting during part of the Government's reproduction of the recordings, Mr. Poulin has somehow waived his right to complain about their accuracy or completeness.

The applicable rule is Federal Rule of Criminal Procedure 16, which provides in part:

Upon a defendant's request, the government must permit the defendant *to inspect and to copy* or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
    (i)   the item is material to preparing the defense;
    (ii)  the government intends to use the item in its case-in-chief at trial; or
    (iii) the item was obtained from or belongs to the defendant.

---

[4] On this issue, the parties' memoranda consist solely of factual arguments. Other than a passing reference to Rule 16 in the Government's memorandum, neither party cited or discussed the rules of criminal procedure, any statute, or caselaw.

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added).[5]  Here, there is no indication either that the Government intends to use the recordings in its case-in-chief, or that they were obtained from Mr. Poulin or belong to him.  Accordingly, Mr. Poulin has the right to inspect the Exxacom system only if he can demonstrate that the system is included within a category of material that is subject to disclosure; that it is within the Government's possession, custody, or control; and, that it is material to the preparation of his defense.

### 1. Material Subject to Disclosure

The parties have not described the Exxacom system in detail.  At a minimum, it appears that it is a technological apparatus that can be dismantled and reassembled, *Gov't's Opp'n* at 3, which contains a searchable collection of recordings of telephone conversations.  *Id.*; *Def.'s Mot.* at 3.  The Court is satisfied that the Exxacom system can be characterized fairly as a tangible object, data, or a collection of copies of the latter and thus, subject to disclosure.  *See United States v. Chaudhry*, 850 F.2d 851, 858 (1st Cir. 1988) (observing that Rule 16 governs disclosure and production of tapes containing recorded conversations as "tangible objects"); *United States v. Fassler*, 46 F.R.D. 43, 44 (S.D.N.Y. 1968) (same).

### 2. Government's Possession, Custody, or Control

The Government has no duty to produce to Mr. Poulin or permit him to inspect and copy "evidence outside of its control," nor can the Court compel it to do so.  *United States v. Hughes*, 211 F.3d 676, 688 (1st Cir. 2000).  Nowhere in the Government's opposition is there any argument that the Exxacom system is outside of its control.  On the contrary, the Government's

---

[5] The Government acknowledges its obligation to disclose the Defendant's own statements within its possession, custody, or control, and implies it has done so.  *Gov't's Opp'n* at 1-2.  The Court does not discuss the provisions of Rule 16 mandating such disclosures.  *See* Fed. R. Crim. P. 16(a)(1)(A), (B).

factual recital includes multiple indicia of control.[6] The Government arranged for the reassembly of the previously-dismantled system to satisfy Mr. Poulin's request. It engaged a Sheriff's Office employee to search for and reproduce Mr. Poulin's requested calls. It produced to Mr. Poulin the physical tapes on which the recordings were stored, explaining in an accompanying letter which of the calls had not been recorded, which it had been unable to find, and why the as-produced start times of certain calls differed from the as-requested start times. Were it not for the fact that the Exxacom system is, apparently, stored at the Hancock County Sheriff's Office, the Court would find without reservation that for present purposes the Exxacom system is within the Government's control.

The weight of appellate authority teaches that the term "government" in Rule 16 does not encompass local law enforcement offices, such as the Hancock County Sheriff's Office. *See United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998); *United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997); *United States v. Hamilton*, 107 F.3d 499, 509 n.5 (7th Cir. 1997); *United States v. Gatto*, 763 F.2d 1040, 1048-49 (9th Cir. 1985); *Thor v. United States*, 574 F.2d 215, 220-21 (5th Cir. 1978).

However, these cases recognize that application of this interpretation can work considerable mischief. *Marshall*, 132 F.3d at 69 (warning against allowing the Government to maintain its access to relevant documents located in another agency while at the same time denying the Defendant access because the documents are located in another agency). Here, it seems the Government inherited this prosecution from the Hancock County Sheriff's Office, the Government now has free access to the Exxacom system, and the state agency's own use of the

---

[6] In one sense, the Government's opposition can be read to concede the control element. The Government states that "[a]fter turning over the calls as to which copies already existed and eliminating the calls over which it had no control," the Government turned to the Exxacom system to determine which calls had been recorded upon initial transmission. *Gov't's Opp'n* at 2.

7

system is largely at the Government's direction. The Court concludes that the Exxacom system is within the Government's control.

### 3. Material to Preparing the Defense

Having met the first two Rule 16 elements, Mr. Poulin must make a *prima facie* showing that the Exxacom system is material to preparing his defense. *United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12-13 (1st Cir. 1989). This means that Mr. Poulin must demonstrate that the Exxacom recordings bear more than some "abstract logical relationship to the issues in the case." *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975). He must show that full disclosure of the original Exxacom recordings will enable him "significantly to alter the quantum of proof in his favor." *Id.* at 763; *United States v. Santana*, 83 F. Supp. 2d 224, 232 (D.P.R. 1999). Although demonstrating materiality "is not a heavy burden," *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992), "'[a] general description of the materials sought or a conclusory argument as to their materiality is insufficient.'" *Carrasquillo-Plaza*, 873 F.2d at 13 (quoting *United States v. Cadet*, 727 F.2d 1453, 1466 (9th Cir. 1984)). Moreover, unlike the Government's *Brady* obligation to disclose exculpatory evidence that is "material either to guilt or to punishment," *United States v. Brown*, 510 F.3d 57, 71 (1st Cir. 2007) (internal quotation omitted), Rule 16 requires the disclosure of inculpatory and exculpatory evidence alike. *Marshall*, 132 F.3d at 68 (observing that inculpatory evidence may enable a defendant to "prepar[e] a strategy to confront the damaging evidence at trial[,] . . . conduct[] an investigation to attempt to discredit that evidence[, or] . . . not present[] a defense which is undercut by such evidence"). The Court evaluates the parties' regrettably undeveloped contentions in light of this authority.

In his motion, Mr. Poulin cursorily explains why the requested recordings are material to his defense. He alleges that the recordings "contain information extremely relevant to this prosecution including, *inter alia*, statements undercutting the Government's expected identification of the person captured in certain depictions in this case and the dating of certain depictions of Nicole R." *Def.'s Mot.* at 2. The Court is aware that the identity of the videotaped subject and the date on which the videotaping is alleged to have occurred are both significant issues.[7] For example, in his motion *in limine*, Mr. Poulin claimed that the only images he is charged with producing that could be found to be depictions of sexually explicit conduct depict Wendy R., his adult, former girlfriend; he also said the Government produced a recording of a conversation in which Wendy R. told investigators how to distinguish between her daughter and herself. *Def.'s Mot. for Pre-trial Rulings Regarding Pornographic Content* at 2-3 & n.3 (Docket # 28). Similarly, in his motion to dismiss the indictment, Mr. Poulin claimed that Nicole R., the alleged victim in this case, was a minor for only a portion of "times relevant." *Def.'s Mot. to Dismiss the Indictment Insofar as the Production of Private and Personal Video Images, Not Intended for Distribution is Protected Under the First Amendment* at 1 (Docket # 25); *see* 18 U.S.C. § 2256(1) (defining minor as "any person under the age of eighteen years"). The Court cannot agree with the Government that Mr. Poulin has failed to show "the relevance or particular importance of the information" contained on the Exxacom system. *Gov't's Opp'n* at 4.

The fact that the Government has already produced to Mr. Poulin a recording of a conversation in which Wendy R. provides investigators with personally identifying information is dispositive of materiality as to that conversation. Whether exculpatory or inculpatory, if it becomes necessary at trial to distinguish between images of adult mother and minor daughter,

---

[7]Having issued three Orders in this case, the Court is generally familiar with the Government's contentions and the Defendant's defenses.

this identifying information may "alter the quantum of proof" in Mr. Poulin's favor. *Ross*, 511 F.2d at 763. This means that Mr. Poulin has a right under Rule 16 not only to a copy of that conversation, which the Government has already produced, but also to inspect the original recording of that conversation on the Exxacom system—the tangible object on which that recording is stored. Fed. R. Crim. P. 16(a)(1)(E).

Whether the balance of recordings Mr. Poulin seeks are equally material remains to be seen. However, the recorded conversations were between the victim and the investigating agency and the victim's mother and the investigating agency, and facially, such conversations would be material. The Government's counsel represents that she has "listened to all of the calls and the vast majority of them involve the victim's [m]other passing time with law enforcement officers." *Gov't's Opp'n* at 4. Idle chatter to a prosecutor may be grist for cross-examination to a defense lawyer. Then again, if a record "be in possession of the opposite party, what statement of its contents or applicability can be expected from the person who claims its production, he not precisely knowing its contents?" *United States v. Burr*, 25 F. Cas. 187, 191 (C.C.D. Va. 1807) (No. 14,694). There being no answer from the Government to Chief Justice Marshall's perennially confounding question, the Court determines that Mr. Poulin has made a *prima facie* showing that the Exxacom system is material to the preparation of his defense.

Although the Court is mindful of the Government's concerns regarding the attendant monitoring burden, Rule 16's materiality standard was adopted to "underscore[] the importance of disclosure of evidence favorable to the defendant."[8] Fed. R. Crim. P. 16 advisory committee's

---

[8] The Government observes that responding to the discovery request "required an employee of the Sheriff's Office to invest nearly 30 hours in searching for, listening to and recording the calls requested." *Gov't's Opp'n* at 3. The Court is sensitive to the burden on the Government. But, it is also aware that the Government has charged the Defendant with the production of child pornography, a crime which carries a mandatory minimum term of fifteen years incarceration. *Indictment* (alleging a violation of 18 U.S.C. § 2251(a), which provides for a term of imprisonment of "not less than 15 years"). The Government's burden is measured in hours; the Defendant's in years.

note (1974 amendment); 2 Charles Alan Wright, Federal Practice and Procedure: Criminal § 254, at 106 (3d ed. 2000) (stating that the predecessor to Rule 16(a)(1)(E), as amended in 1974, "omits any requirement that the request be reasonable") (Wright). Given the Government's willingness "to devise a mechanism by which [Mr. Poulin] and his expert can listen to the original recordings," *Gov't's Opp'n* at 5, the Court is confident that the parties can cooperatively guarantee that Mr. Poulin's procedural rights are protected without over-burdening the Government.[9]

Finally, the First Circuit has disapproved of governmental nondisclosure of Rule 16 material for fear that the secrecy of irrelevant information will be compromised. *United States v. Rosario-Peralta*, 199 F.3d 552, 559 (1st Cir. 1999) (describing as a "serious infraction which we do not condone" the Government's withholding of discoverable material on the grounds that it desired to maintain the secrecy of certain code names contained therein). The Government provided no authority for the proposition that because the Exxacom system captured telephone calls from members of the public to the Sheriff's Office, this makes the tapes of these calls so confidential that the Defendant cannot gain access to the portions of the tapes that mix relevant and irrelevant conversations. Further, the Defendant has proposed means by which private and irrelevant conversations would remain private. *Def.'s Mot.* at 3. Therefore, the Court grants Mr. Poulin's motion for access to the Exxacom system to confirm that the recordings the Government has provided him are faithful reproductions of the conversations originally recorded by the Exxacom system.

---

[9] The Court's understanding of the practicalities of responding to the Defendant's request is limited. If the Government is unable to comply with aspects of this Order, the Court is amenable to further review, once the issues have been narrowed and the underlying facts further explicated.

**B.     Pre-Trial Depositions**

Federal Rule of Criminal Procedure 15 addresses pre-trial depositions:

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice.

Fed. R. Crim. P. 15(a)(1). Unlike civil actions, where depositions may be taken as a matter of right and may be for discovery or to obtain evidence, "depositions may be taken in a criminal case only upon court order, and are not for discovery of information but only to preserve evidence." Wright § 241, at 8. Mr. Poulin's motion to depose Sony and the Houston "spy shop", as currently cast, is a discovery motion, seeking to obtain information with which he plans to demonstrate that the Government's evidence is faulty. It is precisely the type of discovery not allowed in a criminal case. *United States v. Edwards*, 69 F.3d 419, 437 (10th Cir. 1995); *United States v. Kelley*, 36 F.3d 1118, 1124-25 (D.C. Cir. 1994); *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993). If Mr. Poulin is to convince the Court to exercise its discretion, which the First Circuit has said should be "exercised carefully," and allow the taking of pretrial depositions, he bears the burden to demonstrate exceptional circumstances. *United States v. Mann*, 590 F.2d 361, 365 (1st Cir. 1978); *see United States v. Ferrera*, 746 F.2d 908, 912 (1st Cir. 1984); *United States v. Bunnell*, 201 F. Supp. 2d 169, 170 (D. Me. 2002). On this record, he has fallen far short of this burden.

**III.    CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Mr. Poulin's Motion for Discovery (Docket # 33): The Court GRANTS his motion for access to the original Exxacom system, and the Court DENIES his motion to depose "Sony Electronic Corporation" and the "so-called Spy Shop in Houston, Texas."

SO ORDERED.

/s/ John A. Woodcock, Jr.<br>
JOHN A. WOODCOCK, JR.<br>
UNITED STATES DISTRICT JUDGE

Dated this 16th day of December, 2008