UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| DANIEL POULIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:08-cr-00050-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER ON MOTION TO RECUSE**

Because the Defendant failed to present a valid reason for me to recuse myself from presiding over his case, I deny his motion to recuse.

## I.   BACKGROUND

On March 1, 2016, Daniel Poulin, acting pro se, filed a motion for me to recuse myself from any further judicial actions in his case.  *Mot. for Recusal* (ECF No. 339) (*Def.'s Mot.*).  On April 5, 2016, the Government responded, objecting to the recusal motion.  *Gov't's Obj. to Mot. for Recusal* (ECF No. 343) (*Gov't's Resp.*).  On April 19, 2016, Mr. Poulin replied.  *Reply to Gov't's Resp. on Mot. for Recusal* (ECF No. 345) (*Def.'s Reply*).

## II.   THE PARTIES' POSITIONS

### A.    Daniel Poulin's Motion

In his motion to recuse, Mr. Poulin recites some generalities concerning my handling of his case.  He says that I have "for unknown reason(s), exercised partiality in favor of the government" and revealed "a pervasive bias, or prejudice."  *Def.'s Mot.*

at 1. He claims that I have "exercised partiality" by accepting the position determined in the Magistrate Judge's recommended decision and urged by the Government in its briefing concerning the proper characterization of his purported Rule 60(b) motion. *Id.* at 2. He asserts that I "apparently never read[] the government's or Magistrate's description of the 60(b) motion in light of the controlling preceden[ts]." *Id.* He then contends that I have "gone as far as to misquote, miscite and misrepresent the record for no other apparent purpose than to benefit the AUSA." *Id.* at 4. When Mr. Poulin brought these asserted errors to my attention, he believes that "they were simply ignored." *Id.* He concludes that this "is not an exhaustive list of circumstances that warrant a finding that the District Court showed substantial favoritism, but viewed in the aggregate, they are enough to warrant recusal." *Id.*

### B.      The Government's Response

The Government responds that "nothing remotely suggests that the Court's impartiality might reasonably be questioned or that recusal is in order." *Gov't's Resp.* at 1 (citing *In re Bos.'s Children First*, 244 F.3d 164, 167 (1st Cir. 2001)). After reviewing the legal standards applicable to a motion to recuse, *id.* at 1-2, the Government notes that I denied his first motion for reconsideration on April 24, 2014 and observes that "it is by no means clear that the instant motion is timely." *Id.* at 2-3.

In light of Mr. Poulin's prior attacks on the trial Assistant United States Attorney (AUSA) and the Court, the Government states that "any venom that has been injected into these proceedings is not that of the Court." *Id.* at 3. Instead, the

Government quotes my earlier orders as conscious efforts to "take[] Mr. Poulin's assertions of legal error seriously" and to give them "careful consideration and reconsideration." *Id.* (quoting *Order on Mot. for Recons.* at 84 (ECF No. 310)). The Government views the Magistrate Judge's recommended decision of October 19, 2015 in the same vein. *Id.* The Government concludes that "the sole basis on which he insists that this Court should disqualify itself is that the Court has ruled against him," which is "insufficient reason for the Court to grant the instant motion." *Id.* at 4.

C. **Daniel Poulin's Reply**

In his reply, Mr. Poulin first attacks the Government, noting that "it must be acknowledged and considered by an objective mind that the Government is a party opponent which has been the beneficiary of considerable favoritism from the Court." *Def.'s Reply* at 1. He calls the Government's position "disingenuous" and asserts that its "contrary position violates Rule 11." *Id.* at 2. He maintains that the Government's memorandum constitutes a "gross mischaracterization of Poulin's pleadings." *Id.*

Mr. Poulin says that "the Government must admit or deny the allegations asserted against it by Poulin" and states that "[t]heir failure to do so should be held against them to the benefit of the opposing party." *Id.* at 2. But, he protests, "the District Court has, over considerable protest, systematically allowed the Government to ignore these rules with impunity." *Id.*

Mr. Poulin explains the basis for his motion to recuse. *Id.* at 3. He concedes that he is "not protesting the District Court's substantive rulings," but he is

3

protesting "pervasive favoritism . . . in regard to Judge Woodcock's application and invocation of procedural defects in the process, applicable law, and the construction (or misrepresentation) of the claims themselves." *Id.* Mr. Poulin argues that my first show of favoritism "began with the Government's refusal to answer Poulin's claim that *appellate* counsel rendered ineffective assistance for failing to raise <u>Brady/Giglio</u> violation(s) on appeal." *Id.* (emphasis in original). He complains that "Judge Woodcock adopted the Government's position that the claim was defaulted just as the Government proposed." *Id.*

Mr. Poulin writes that "[a]nother circumstance that can be classified as an appearance of favoritism occurred when judge Woodcock proposed a merits analysis in the absence of critical exculpatory evidence that was heavily relied upon in the pleadings." *Id.* at 4. Mr. Poulin contends "[t]his was an abuse of discretion." *Id.* (citation omitted). He notes that "on April 24, 2014, the Court released an eighty-five page opinion that announced for the very first time that critical documents were missing from the record." *Id.* He decries my failure to require his lawyer to produce "critical evidence" as not only an error of law, but also evidence of my impartiality. *Id.* at 5 (citing *Igartúa v. United States*, 654 F.3d 99, 103 (1st Cir. 2011) (citing *United States v. Campo*, 140 F.3d 415, 419 (2d Cir. 1998) (per curiam)); *United States v. Poff*, 926 F.2d 588, 590-91 (7th Cir. 1991) (en banc)). Furthermore, he asserts that the so-called missing evidence was in fact before me. *Id.* at 6 ("indisputably in the Court's possession independent of the allegedly missing evidence"). Then, he says, "building upon its own evidentiary misrepresentations, the Court postulated counterfeit

4

citations to the affidavits and memoranda for the apparent purpose of falsely representing the material elements of fraud outlined in the petition." *Id.*

Mr. Poulin claims to be "at a loss" as to why I described his § 2255 filings as "brimming with a sense of injustice." *Id.* at 7-8. Although he admits that he "took issue" with "several aspects of the Court's previous January 27, 2014 Order," he denies that this constituted a "blasting" or an "attack." *Id.* at 8.

He criticizes the Government's description of the Magistrate Judge's recommended decision as "an objective, well-rounded record - - and precedent-based analysis of a pleading that, although labeled as one under Rule 60, is actually a successive 28 U.S.C. § 2255 petition[.]" *Id.* at 8 (quoting *Gov't's Resp.* at 3). He describes the Government's position as "plainly and simply false." *Id.* In support of his accusation, he cites *Gonzalez v. Crosby*, 545 U.S. 524 (2005) and *Rodwell v. Pepe*, 324 F.3d [66] (1st Cir. 2005), which he says hold that a pleading that "seeks to correct ***defects*** in the ***procedural integrity*** of the § 2255 proceeding . . . falls squarely within the ambit of Rule 60(b) . . . ." *Id.* (emphasis in original).

Finally, he asserts that under 28 U.S.C. § 144, once he has filed an affidavit in support of his motion to recuse, recusal becomes "mandatory." *Id.* at 9 (citing *Faretta v. California*, 422 U.S. 806 (1975)).

## III.   STANDARDS FOR RECUSAL

Mr. Poulin brings his motion to recuse under two federal statutes: 28 U.S.C. §§ 144, 455.

### A.      28 U.S.C. § 144

Turning first to the § 144 part of the motion, the provision reads:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. Mr. Poulin asserts that once he filed an affidavit pursuant to that statute, I must recuse myself. *Def.'s Reply* at 9 ("Section 144 makes recusal mandatory when [accompanied] by a Declaration that sets forth the elements. Mr. Poulin has complied with the statute"). He overstates the rule. It is true that "[s]ection 144 is unusual because it requires that the district judge accept the affidavit as true even though it may contain averments that are false and may be known to be so to the judge." *In re Martinez-Catala*, 129 F.3d 213, 218 (1st Cir. 1997) (citing *United States v. Kelley*, 712 F.2d 884, 889 (1st Cir. 1983)). The First Circuit has explained that one alternative is for the judge to transfer the motion to another judge to hold a hearing and for the transferee judge to determine whether the affidavit was false and—if so—to transfer the action back to the original judge. *Id.* But the First Circuit also observed that "courts have responded to the draconian procedure— automatic transfer based solely on one side's affidavit—by insisting on a firm showing in the affidavit that the judge does have a personal bias or prejudice toward a party . . . ." *Id.* (footnote omitted).

To succeed on a § 144 motion, the movant must demonstrate "personal bias or prejudice." *Id.* Furthermore, the movant must prove that the judge "'has' a personal

bias or prejudice, not that judge might have such a bias or prejudice or that grounds exist for further inquiry." *Id.* at 219.

### B.    28 U.S.C. § 455

Subsection (a) of § 455 provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[1] The First Circuit has observed that the "reach of the subsection is broad.  It forbids partiality whether grounded in an 'interest or relationship' or a 'bias or prejudice'; and it forbids not only the reality of partiality but its objective appearance as well." *United States v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000) (citing *Liteky v. United States*, 510 U.S. 540, 548 (1994)).  At the same time, the First Circuit has noted that "judges are not to recuse themselves lightly under § 455(a)." *Id.* (citation omitted).  The First Circuit wrote that "under § 455(a) a judge has a duty to recuse himself if his impartiality can reasonably be questioned; but otherwise, he has a duty to sit." *Id.* (footnote omitted).

## IV.    DISCUSSION

I deny Mr. Poulin's motion to recuse.

### A.    Daniel Poulin's Motion

Turning first to Mr. Poulin's initial motion, the sole basis for his argument is that I "exercised partiality" by affirming the Magistrate Judge's recommended decision "without comment." *Def.'s Mot.* at 2.  He also states that "[t]he District Court

---

[1]    Section 455 also contains a subsection (b), which lists specific instances where a judge should disqualify himself from a proceeding, such as where the judge knows he is likely to be a material witness in the proceeding.  *See* 28 U.S.C. § 455(b)(1)-(5)(iv).  Mr. Poulin has not claimed that any of these specific provisions applies to his case.

has gone as far as to misquote, miscite and misrepresent the record for no other apparent purpose than to benefit the AUSA." *Id.* at 4. But he offers no specifics.

The Court addresses, therefore, his contention that by affirming the recommended decision of the magistrate judge, I demonstrated partiality. I reject Mr. Poulin's allegation. I remind Mr. Poulin of what occurred at his sentencing hearing. Having found Mr. Poulin guilty as charged of the crime of production of child pornography in violation of 18 U.S.C. § 2251(a), I calculated the advisory guideline range for his imprisonment at 210 to 262 months of incarceration. *Tr. of Proceedings, Presentence Conference and Sentencing Proceedings* 33:9-34:2 (ECF No. 266). The Government urged me to impose a sentence at "the high end of the guideline range," *id.* 27:4-5, a sentence that would have resulted in Mr. Poulin's incarceration for around twenty-one years.

Mr. Poulin's defense lawyer acknowledged that he could not "ask the court to go below 180 months because that is inappropriate because Congress has said it must be at least 180 months," but he did ask the Court to impose a 180-month sentence. *Id.* 31:10-23 ("I'm asking the court to sentence at 180 months"). At the sentencing hearing, I rejected the Government's request for a sentence at the high end of the guideline and accepted Mr. Poulin's request that he be sentenced to fifteen years of incarceration. In doing so, I imposed a sentence eighty-two months lower than the high end of the advisory guideline sentence range and thirty months below the low end; the Court's sentence was, in fact, the very lowest possible legal sentence on Mr. Poulin for the crime he had committed. *See* 18 U.S.C. § 2251 (e) ("Any individual who

violates . . . this section shall . . . be imprisoned not less than 15 years nor more than 30 years"). My lenient sentence refutes the notion that I have harbored any bias or prejudice against Mr. Poulin.

Mr. Poulin speculates that I may not have read the memoranda in the latest round of filings. *Def.'s Mot.* at 2. This is not true, and Mr. Poulin could have no knowledge of what I did or did not read before affirming the recommended decision.[2] *See Order Affirming the Recommended Decision of the Magistrate Judge* at 1 (ECF No. 336) ("I have reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record"). Nor have I given Mr. Poulin's post-conviction arguments short-shrift. *See Order on Mot. Under 28 U.S.C. § 2255* (ECF No. 293) (numbering seventeen pages); *Order on Mot. for Recons.* (ECF No. 310) (*Recons. Order*) (numbering eighty-five pages). To the contrary, as these decisions reflect, I have strenuously attempted throughout his entire proceedings to be fair to Mr. Poulin and in particular have gone to great lengths to understand and treat seriously his post-conviction complaints. I simply have not found them convincing.

The gravamen of Mr. Poulin's motion is that I disagreed with him about whether his motion for relief under Rule 60(b) constituted a second or successive motion under 28 U.S.C. § 2255. But as the United States Supreme Court has written, "judicial rulings alone almost never constitute a valid basis for a bias or impartiality motion." *Liteky*, 510 U.S. at 555 (citing *United States v. Grinnell Corp.*, 384 U.S. 563,

---

[2]      Although I am required to treat the sworn allegations of the § 144 motion as true, Mr. Poulin swore to the contents of his entire motion, including the legal arguments. I consider the statement that I "apparently never read[] the government's or Magistrate's description of the 60(b) motion in light of the controlling preceden[ts]" to be argument, not an assertion of fact. *Def.'s Mot.* at 2.

583 (1966)); *see also United States v. Laureano-Pérez*, 797 F.3d 45, 74 (1st Cir. 2015)
(quoting *Liteky*).

Finally, to state the obvious, my ruling that disappointed Mr. Poulin and
precipitated his motion for recusal merely affirmed the recommended ruling of
another judge, the magistrate judge. This means that another judge made the same
decision about the law as I did, and there is no claim that the other judge is biased
against Mr. Poulin.

### B.    Daniel Poulin's Reply

#### 1.    New Matters in Reply

Mr. Poulin saved until his reply the details of the bases of his recusal motion.
Technically, this is improper. Under District of Maine Local Rule 7(c), a party's reply
memorandum "shall be strictly confined to replying to new matter raised in the
objection or opposing memorandum." D. ME. LOC. R. 7(c). Here, Mr. Poulin held his
arguments in reserve until the Government responded, and as a consequence, the
Government has not had the opportunity to answer many of the issues Mr. Poulin
raised for the first time in his reply.

Nevertheless, the First Circuit has written:

> [A]s a general rule, we are solicitous of the obstacles that pro se litigants
> face, and while such litigants are not exempt from procedural rules, we
> hold pro se pleadings to less demanding standards than those drafted
> by lawyers and endeavor, within reasonable limits, to guard against the
> loss of pro se claims due to technical defects.

*Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008) (citations omitted); *see also*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se complaints are to be "liberally

construed") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Even so, "pro se

status does not insulate a party from complying with procedural and substantive

law." *Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997) (citing *Eagle Eye Fishing*

*Corp. v. United States Dep't. of Commerce,* 20 F.3d 503, 506 (1st Cir. 1994)).  With

this relaxed standard in mind, the Court will address the new specific issues Mr.

Poulin raised in his reply.

### a.    The Alleged Failure to Address the Appellate Counsel Claim

One of Mr. Poulin's claims is that the Court showed favoritism to the

Government by not addressing the claim that his appellate counsel had rendered

ineffective assistance of counsel by failing to raise on appeal certain *Brady/Giglio*[3]

issues.  *Def.'s Reply* at 3 ("As Poulin has outlined, this pattern of favoritism is not

new.  It began with the Government's refusal to answer Poulin's claim that ***appellate***

counsel rendered ineffective assistance for failing to raise <u>*Brady/Giglio*</u> violations on

appeal.  (*See* ECF Doc. #314 (IV) at pages 7-9).  Judge Woodcock adopted the

Government's position that the claim was defaulted just as the Government

proposed").  Mr. Poulin complains that "[a]t no time after the Government's

suggestion to the Court that the claim was defaulted, did the Court give serious

consideration of ***appellate*** counsel's ineffectiveness, as attested to in the petition,

supporting memorandum and affidavits." *Id.* (emphasis in original).

Mr. Poulin is wrong.  On April 24, 2014, I expressly addressed Mr. Poulin's

appellate counsel ineffectiveness claim:

---

[3]     *Brady v. Maryland,* 373 U.S. 83 (1963); *Giglio v. United States,* 405 U.S. 150 (1972).

> At any rate, reasonable choices by appellate counsel regarding which issues to raise and which to abandon are afforded great deference under the *Strickland* analysis, *Smith v. Murray*, 477 U.S. 527, 535-36 (1986), and the Court would not find Mr. Van Dyke's choice ineffective even if Mr. Poulin had hewed to a standard *Strickland* theory of relief. Mr. Van Dyke's appellate strategy was to argue that the statute under which Mr. Poulin was convicted violated the United States Constitution and that the evidence was insufficient to support conviction. *See Br. of Appellant* at \*1-25. Mr. Van Dyke could reasonably have concluded that the *Brady* claims were not worth raising on appeal because they were inconsistent with his appellate strategy. He could also have concluded, as the Court explains in more detail below, that the *Brady* claims were not a promising appellate issue because there is little evidence of material prejudice to Mr. Poulin at his trial.

*Recons. Order* at 79-80. I went on to state that "even if Mr. Poulin had not [been] procedurally defaulted, he would not be entitled to habeas relief under *Brady*." *Id.* at 80. I then explained why. *Id.* at 80-83. So to the extent that Mr. Poulin is complaining that I must recuse myself because I refused to address his ineffectiveness claim against appellate counsel, he is simply incorrect.

To the extent that he is complaining that when I affirmed the magistrate judge, neither he nor I addressed the merits of his appellate counsel ineffectiveness claim, he is correct, but the magistrate judge found (and I agreed) that the claim was procedurally defaulted. Therefore, neither he nor I reached the merits of his motion because we lacked jurisdiction to do so. *See Recommended Decision* at 8 (ECF No. 332).

### b.    Missing Documents

Mr. Poulin next claims that I should recuse myself because I did not seek out missing documents before issuing my decision on April 24, 2014. *Def.'s Reply* at 4-5. The background begins with Mr. Poulin's submission in April 2012 of a huge number

12

of documents in support of his § 2255 petition supplemented in July 2012 by a complete set of transcripts generated in the case.  *See* ECF Nos. 226-46, 258-66.  On April 16, 2013, the magistrate judge issued a recommended decision to deny the § 2255 petition.  *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 288).  After an objection and extensive briefing by Mr. Poulin, *see Obj. to the Magistrate's Recommended Decision* (ECF No. 291), I affirmed the recommended decision on January 15, 2014.  *Order on Mot. Under 28 U.S.C. § 2255* (ECF No. 293); *Am. Order on Mot. Under 28 U.S.C. § 2255* (ECF No. 295).  Mr. Poulin filed a motion for reconsideration on January 29, 2014.  *Pet'r's Mot. for Recons.* (ECF No. 296) (*Pet'r's Recons. Mot.*).  On April 24, 2014, I issued an eight-five page order denying the motion for reconsideration.  *Recons. Order.*

Within the April 24, 2014 order, I noted that several exhibits were either missing or incomplete.  *Id.* at 19-26.  Mr. Poulin says that the fact I did not demand production of the complete exhibits is evidence that I was biased against him.  *Def.'s Reply* at 4-6.  There are several reasons I did not order Mr. Poulin to produce the missing documents.  First, I did not think the content of the missing documents was material.  *Recons. Order* at 18.  I undertook a detailed review of the trial evidence, found that the Government had presented an exceptionally strong case against Mr. Poulin, and concluded that the documents were "immaterial to the trial evidence." *Id.* at 9-16.

I reviewed the additional evidence that Mr. Poulin had provided "in the interest of completeness" in an effort to "assure Attorney Williams and Mr. Poulin

13

that [the Court] understands, but disagrees with their contentions." *Id.* at 18-19. The fact that I undertook a detailed analysis of the record on an issue I thought was not material is not evidence of bias; instead, I was motivated by a desire to explain my rulings to Mr. Poulin and his attorney.

Second, this motion had arrived through the recommended decision process. It has long been the rule that a litigant "must take before the magistrate, not only their best shot, but all their shots." *Bordon v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 2002) (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D. Me. 1984)). In not seeking out material that had not been before the magistrate judge, I was complying with this rule.

Nor is it the judge's responsibility to make certain that the parties have put the proper evidence before the court. If a party represented by an attorney puts into the record only a portion of an exhibit, judges assume that the lawyer acted deliberately, and to demand the complete exhibit would risk turning a judge into an advocate.

Finally, as I note in the separate order that I am issuing today, I have reviewed the supposedly exonerating documents that Mr. Poulin supplied on May 1, 2015, and I have concluded that they make no difference in the verdict in this case or to his post-verdict motions.

### c.     A Sense of Injustice

Mr. Poulin complains that I characterized both him and his attorney as "brimming with a sense of injustice." *Order on Mot for Recons.* at 1. I continue to

believe that this accurately describes Mr. Poulin's post-conviction filings.  In his original § 2255 motion, he accused the AUSA of engaging in "prosecutorial misconduct . . . including evidence manufacturing and patterned intrinsic and extrinsic Fraud on the Court." *Supporting Mem. for a Mot. to Vacate, Set Aside, or Correct Sentence by a Person in Fed. Custody Filed Pursuant to Title 28 U.S.C. § 2255* at 5 (ECF No. 223).  Mr. Poulin's memorandum charges the federal prosecutor with willfully suppressing exculpatory evidence and placing "false evidence" into the record.  *Id.* at 5.  The memorandum continually repeats these serious allegations of prosecutorial misconduct.  *Id.* at 8 ("This is a textbook example of fraud on the court"), at 19 ("The prosecutor's conduct . . . would rise to the level of patterned extrinsic fraud upon the defense and upon the Court") (collecting cases), at 29 ("It is difficult to imagine a clearer case of bad faith prosecutorial misconduct"), at 33 ("[O]fficers of the court conspired to, and did, perpetrate an egregious fraud on the court, which was specifically aimed at influencing and corrupting the orders and judgments of this Court").

When the magistrate judge and I did not agree with him, he trained his fire on me.  He accused me of engaging in a "complete mischaracterization of the 'grounds' asserted in the Petition," of having "utterly mischaracteriz[ing] the record of the government's fraud and prosecutorial misconduct that became exposed after trial," of making statements that were "NOT correct," of "ignor[ing] the government's egregious pattern of bad faith manipulation of the circumstances, which is best described as fraud in the context of discovery violations," of "forcing the defense to

15

abandon its most salient prosecutorial misconduct posture," of making decision "[n]o reasonable jurist" would make, of engaging in a "misguided attempt to resolve the Petitioner's Fraud on the Court claim," of misunderstanding and misapplying the applicable standards, and of not allowing a hearing on the prosecutor's misconduct. *Pet'r's Recons. Mot.* at 1-15.

Again, "brimming with a sense of injustice" still seems a fair description of Mr. Poulin's memorandum. More to the point, however, for purposes of the motion to recuse, I put Mr. Poulin's rhetoric aside and have made a strenuous effort to understand what was motivating this unusual degree of indignation. I issued an eighty-five page opinion, discussing each of Mr. Poulin's points. The fact he did not succeed does not demonstrate that I was biased against him. It demonstrates only that he failed to convince me that his claim was meritorious.

## C. A Strategic Motion

I have made it clear that I am utterly convinced that Mr. Poulin committed a horrendous breach of the privacy of the teenaged daughter of his girlfriend by secretly videotaping her over many years as she showered, disrobed, and went to the bathroom in their home. I described this in detail in the April 24, 2014 order denying Mr. Poulin's motion for reconsideration. *Recons. Order* at 1-3, 9-16.

One of the legitimate concerns of the First Circuit in a motion to recuse is that the movant may be attempting "to manipulat[e] the system for strategic reasons, perhaps to obtain a judge more to their liking." *In re Allied-Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (Breyer, J.) (citations omitted).

I am concerned here that Mr. Poulin is attempting to remove me from the case and get a fresh start with an entirely new judge who has not viewed the hours and hours of appalling videotape of the victim in various states of undress as she aged in his home from about thirteen to over eighteen, who has not examined the evidence of the elaborate "studio" he constructed in the bathroom of his Islesford, Maine house, who has not listened to the testimony of the victim and the testimony of her friend, both of whom came into court and identified their naked bodies as the bodies depicted in the discs that Mr. Poulin produced, and who has not heard witnesses confirm that he all but confessed to the crime.

V.   **CONCLUSION**

The Court DENIES Daniel Poulin's Motion for Recusal (ECF No. 339).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2016