UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANIEL POULIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  1:08-cr-00050-JAW |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER ON MOTION FOR RECONSIDERATION OF ORDER ON MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

Faced with yet another motion from Daniel Poulin filled with angry denunciation and accusation, the Court has set aside his hyperbolic language and addressed the merits of his motion to reconsider a denial of a motion to reconsider a denied motion to reconsider. Despite his characterization, it has concluded that his motion is substantive, not procedural, and improperly attempts to avoid the law's prohibition against successive § 2255 petitions. The Court denies his latest motion to reconsider.

**I.   BACKGROUND**

   **A.   Procedural History**

On September 14, 2009, this Court held a bench trial and issued a verdict finding Daniel Poulin guilty as charged of violating 18 U.S.C. § 2251(a), which prohibits the production of child pornography. *Min. Entry* (ECF No. 184). On January 27, 2010, the Court imposed on Mr. Poulin the mandatory minimum

sentence of 180 months. *J.* (ECF No. 190); 18 U.S.C. § 2251(e). On January 28, 2010, Mr. Poulin appealed his conviction on two grounds: (1) that § 2251(a) was unconstitutional as applied to him because his conduct was purely personal and did not have a substantial effect on interstate commerce; and (2) that the Government's evidence was insufficient to sustain a conviction because the Government failed to show that he "produced" sexually explicit images that traveled interstate. *United States v. Poulin*, 631 F.3d 17 (1st Cir. 2011); *Opinion of Ct. of Appeals for the First Circuit* at 1 (ECF No. 209). On January 7, 2011, the First Circuit Court of Appeals affirmed his conviction, *J. of Ct. of Appeals for the First Circuit* (ECF No. 210), and on January 28, 2011, the First Circuit issued its mandate. *Mandate* at 1 (ECF No. 216).

On April 6, 2012, Mr. Poulin filed an extensive motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. *Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Fed. Custody* (ECF No. 224) (*First § 2255 Mot.*). On April 16, 2013, the Magistrate Judge issued a recommended decision, recommending that the Court dismiss the petition. *Recommended Decision* at 29-30 (ECF No. 288) (*First Recommended Decision*). Mr. Poulin objected to the recommended decision on May 18, 2013. *Obj. to the Magistrate's Recommended Decision* (ECF No. 291). On January 15, 2014, this Court affirmed the recommended decision. *Order on Mot. Under 28 U.S.C. § 2255* at 17 (ECF No. 293); *Am. Order on Mot. Under 28 U.S.C. § 2255* (ECF No. 295) (*First § 2255 Order*). On February 18, 2014, Mr. Poulin moved for reconsideration. *Pet'r's Mot. for Recons.* (ECF No. 296)

(*First Mot. for Recons.*).  On April 24, 2014, this Court denied Mr. Poulin's motion for reconsideration.  *Order on Mot. for Recons.* (ECF No. 310) (*Order on Mot. for Recons.*).

On May 1, 2015, Mr. Poulin filed a motion for relief pursuant to Rule 60(b).  *Mot. Pursuant to Civil Rule 60(b)* (ECF No. 314) (*Second Mot. for Recons.*).  On October 19, 2015, the Magistrate Judge issued a recommended decision, recommending that the Court dismiss Mr. Poulin's petition as a second or successive motion under 18 U.S.C. § 2255.  *Recommended Decision on Rule 60(b) Mot.* (ECF No. 332) (*Second Recommended Decision*).  On November 6, 2015, Mr. Poulin objected to the recommended decision.  *Obj. to Recommended Decision* (ECF No. 333).  On January 29, 2016, the Court affirmed the magistrate judge's recommended decision.  *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 336) (*Second § 2255 Order*).

On February 29, 2016, Mr. Poulin filed a motion for reconsideration of the order affirming the magistrate judge's recommended decision.  *Rule 60(b) Mot. for Recons.* (ECF No. 337) (*Pet'r's Mot. for Recons.*).[1,2]  The Government responded to Mr. Poulin's motion for reconsideration on March 31, 2016.  *Gov't's Resp. to Pet'r's Rule 59(e) and Rule 60(b) Mots. for Recons.* (ECF No. 342) (*Gov't's Resp.*).  Mr. Poulin replied on April 19, 2016.  *Reply to Gov't's Resp. to Rule 59(e) Mot. to Recons.* (ECF No. 344) (*Pet'r's Reply*).

---

[1] On the same day, Mr. Poulin filed a motion for this Judge to recuse himself from this case. *Mot. for Recusal* (ECF No. 339).  With this Order, the Court is issuing a separate order denying the motion to recuse.  *Order on Mot. for Recusal* (ECF No. 346).

[2] On March 1, 2016, Mr. Poulin filed a nearly identical motion, citing Rule 59(e), not Rule 60(b). *Rule 59(e) Mot. for Recons.* (ECF No. 338).  This Order responds to both the Rule 60(b) and the Rule 59(e) motions.

## II.     PROCEDURAL POSTURE

### A.     The Second Recommended Decision

At issue is the Court's affirmance of the Magistrate Judge's second recommended decision. In the October 19, 2015 recommended decision, the Magistrate Judge observed that in the initial § 2255 petition, Mr. Poulin raised two claims for ineffective assistance of counsel. *Second Recommended Decision* at 2 (citing *First Recommended Decision* at 2). The Magistrate Judge described the earlier § 2255 petition as claiming that his trial counsel "failed effectively to pursue charges of prosecutorial misconduct, including alleged *Brady* and *Giglio* violations,[3] the alleged manufacture of evidence, and alleged fraud on the court." *Id.* (citing *First Recommended Decision* at 2). In addition, the Magistrate Judge wrote that Mr. Poulin asserted "that his counsel failed properly to object to and appeal from 'the cumulative effect of multiple alleged errors related to ground one.'" *Id.* (quoting *First Recommended Decision* at 2).

The Magistrate Judge reviewed the standards for determining whether a post-conviction petition—filed after a final judgment on a § 2255 petition—that the petitioner has denominated as a motion under Rule 60(b) is in fact a Rule 60(b) motion or a successive § 2255 petition. *Id.* at 5-7. If the new filing is a second or successive § 2255 motion, Mr. Poulin would be required to obtain certification from the appropriate court of appeals before a district court may consider it. *Id.* at 5 (citing 28 U.S.C. § 2244(b)(3)(A); 28 U.S.C. § 2255(h); FIRST CIRCUIT LOC. R. 22.1; *Trenkler v.*

---

[3]     *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

4

*United States*, 536 F.3d 85, 96 (1st Cir. 2008) (quoting *Pratt v. United States*, 129 F.3d 54, 57 (1st Cir. 1997)).  The Magistrate Judge observed that in *Gonzalez v. Crosby*, 545 U.S. 524, 530-32 (2005), the United States Supreme Court "distinguished between (1) a motion that is filed as a Rule 60(b) motion but that is, in substance, a second or successive habeas motion subject to gatekeeping requirements; and (2) a motion that is properly brought as a Rule 60(b) motion." *Id.*

The Magistrate Judge reviewed Mr. Poulin's motion and concluded that "all of Petitioner's claims can be fairly characterized as claims that must be presented, if at all, in a second or successive section 2255 motion." *Id.* at 8.  The Magistrate Judge concluded that Mr. Poulin could not go forward with his Rule 60(b) motion because it was in fact a second or successive § 2255 motion and he had not obtained circuit court permission to file the motion.  *Id.*

### B. Daniel Poulin's Motion for Reconsideration

In his motion for reconsideration, Mr. Poulin asserts that before dismissing his petition, the law requires the Court to find "beyond a reasonable doubt that [Poulin] can prove no set of facts in support of his claim which would entitled him to relief." *Pet't's Mot. for Recons.* at 1 (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).[4]  Mr. Poulin quotes the Magistrate Judge's characterization of

---

[4] This is not the legal standard applicable to Mr. Poulin's motion.  Mr. Poulin takes this quote from a Supreme Court case that reviewed the dismissal of a civil rights action under 42 U.S.C. § 1983.  *See Estelle*, 429 U.S. at 98.  The *Estelle* Court addressed the standard for ruling on a motion to dismiss a civil rights action, not the standard for ruling on a Rule 60(b) or 59(e) motion challenging a conviction.

Furthermore, Mr. Poulin misquotes the actual language in *Estelle*, which states that a pro se civil complaint may be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 106 (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

the errors he alleges occurred in the § 2255 petition: (1) that the Court relied on a case that was distinguishable, (2) that the Court failed to address a non-defaulted claim of ineffective assistance of appellate counsel, (3) that the Court erroneously decided its April 24, 2014 order on Mr. Poulin's motion for reconsideration when critical documents were missing from the record, (4) that the Court mischaracterized Mr. Poulin's claims and misstated the record, (5) that the Court erroneously discounted sworn statements that entitled Mr. Poulin to an evidentiary hearing, (6) that the Court failed to address the prosecution's malfeasance regarding known perjured testimony, and (7) that the Court failed to address an inaccurate statement by the prosecutor to the Court about the discovery, correction, and origin disclosure of the Government's falsified device connection. *Id.* (citing *Second Recommended Decision* at 3). Mr. Poulin insists these issues—even as framed by the Magistrate Judge—are procedural, and not substantive, because his motion "addresses only the ***procurement*** of the judgment in the habeas proceeding." *Id.* at 4 (emphasis in original).

    **C.    The Government's Response**

Under the standards of either Rule 59(e) or 60(b), the Government contends that Mr. Poulin's motion is without merit. *Gov't's Resp.* at 1-4. The Government reviews this case's knotty procedural history, culminating in the Magistrate Judge's second recommended decision, and argues that "[n]othing about the Rule 60(b) Magistrate Judge's careful analysis or this Court's acceptance of that analysis amounts to a misapprehension of any facts or controlling law." *It*. at 5-6 (citing

*Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006)). Turning to Mr. Poulin's present filings, the Government notes that he "challenges the denial of his original Rule 60(b) motion on the same seven bases he raised in the first Rule 60(b) motion." *Id.* at 7. Thus, according to the Government, "the instant pleadings, like the Rule 60(b) motion they attempt to have revisited, are themselves unauthorized successive §2255 petitions that the Court lacks jurisdiction to consider." *Id.* (citing *Trenkler*, 536 F.3d at 97).

### D.   Mr. Poulin's Reply

Mr. Poulin disagrees with the Government as to whether his claims are procedural or substantive, asserting that they "*are* in substance procedural claims, and *are not* claims that can be characterized as an attack on the merits of the criminal judgment." *Pet'r's Reply* at 2-3 (emphasis in original). As Mr. Poulin sees it, both the Government and the Magistrate Judge "merely alleged that [his motion is] a Second or Successive without *any* evidentiary or legal foundational support." *Id.* at 3 (emphasis in original). After setting out the law as he understands it, *id.* at 3-5, Mr. Poulin runs through his claims and casts them as procedural. *Id.* at 5-8. He closes by arguing that his motion is timely and asserting alternative grounds for relief. *Id.* at 8-9.

## III.   LEGAL STANDARD

To be successful on a Rule 60(b) motion, a movant must:

> persuade the trial court, at a bare minimum, that [his] motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially

7

> meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted.

*Giroux v. Fed. Nat'l Mortg. Ass'n*, 810 F.3d 103, 106 (1st Cir. 2016) (quoting *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002)).  Moreover, "relief under Rule 60(b) is extraordinary in nature and . . . motions invoking that rule should be granted sparingly."  *Id.* (quoting *Karak*, 288 F.3d at 19).

In *Rodwell v. Pepe*, the First Circuit explained the circumstances under which a petitioner may state a claim for relief under Rule 60(b).  324 F.3d 66 (1st Cir. 2003). The First Circuit stuck a middle path between those circuits that forbid the use of a Rule 60(b) motion because it circumvents the restrictions of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 and those circuits that allow free use of a Rule 60(b) motion.  *Id.* at 67.  The First Circuit observed that AEDPA's restrictions "make it implausible to believe that Congress wanted Rule 60(b) to operate under full throttle in the habeas context."  *Id.*  The *Rodwell* Court gave examples of situations where a court might be justified setting aside a judgment denying habeas relief:

> Mistake and fraud are examples of such a circumstance. Say, for instance, that a federal judge dismisses a habeas petition because the petitioner fails to respond to a show-cause order—and a subsequent Rule 60(b) motion alleges that the show-cause order was never served on the petitioner.  Or say, for instance, that the federal court bases an order of dismissal on the representations of a state prosecutor—and a subsequent Rule 60(b) motion alleges that the representations made to the habeas court were knowingly false.  In each situation, the motion challenges only the etiology of the habeas judgment itself.  Accordingly, it makes sense to consider the motion as a Rule 60(b) motion simpliciter rather than as a second or successive habeas petition.

*Id.* at 70; *see also Munoz v. United States*, 331 F.3d 151, 152-53 (1st Cir. 2003) (per curiam) (applying *Rodwell* "with equal force in the section 2255 milieu"). The First Circuit went on to explain that "[t]he inquiry must proceed case by case." *Rodwell*, 324 F.3d at 70. First, a court "must examine the factual predicate set forth in support of a particular motion." *Id.* "When the motion's factual predicate deals primarily with the constitutionality of the underlying state conviction or sentence, then the motion should be treated as a second or successive habeas petition." *Id.* But when the motion's factual predicate "deals with some irregularity or procedural defect in the procurement of the judgment denying habeas relief," then the motion "should be treated within the usual confines of Rule 60(b)." *Id.* The First Circuit acknowledged that the test will not operate with "mathematical precision," and it left the district courts to "sift wheat from chaff." *Id.* at 71.

**IV.  DISCUSSION**

In his motion to reconsider, Mr. Poulin has heated up his adverbial and adjectival advocacy. He accuses the Court of "obstinately ignor[ing]" his legal formulations, *id.* at 5, of refusing to provide rulings on his argument about ineffectiveness of appellate counsel, *id.*, of endorsing Governmental "fabrications," *id.* at 6, of refusing to review Mr. Poulin's arguments under his proposed "proper formula" and thereby exhibiting a "pervasive bias," *id.* at 7, of "perversely determin[ing] the outcome of this case (purportedly fairly) on the *known* basis that critical evidence was missing", *id.* at 8, of "deliberately misconstru[ing] the record, misquoting, fabricating quotes, misciting, and misrepresenting evidence and

9

memoranda," *id.* at 9, of "exercis[ing] favoritism as to obfuscate the language and purpose of the May 6 email between counsel, which rendered its content meaningless." *Id.* He has also deemed "nihilistic" the notion that his "motion is, in substance, a second and successive §2255." *Id.* at 3. In addressing Mr. Poulin's motion, the Court has placed aside Mr. Poulin's accusatory language and has instead turned to the merits.

The Court briefly traces the travel of the case so far. Over four years ago, Mr. Poulin filed his first § 2255 petition, *First § 2255 Mot.*, the Magistrate Judge recommended denial of that petition, *First Recommended Decision*, and the Court denied the petition. *First § 2255 Order*. Mr. Poulin then moved the Court to reconsider its denial of his first § 2255 petition, *First Mot. for Recons.*, which the Court denied in an order comprising eighty-five pages. *Order on Mot. for Recons.* Mr. Poulin again moved to reconsider, *Second Mot. for Recons.*, the Magistrate Judge recommended denial of that motion as in effect a second or successive motion pursuant to § 2255, *Second Recommended Decision*, and the Court denied the motion. *Second § 2255 Order*. Mr. Poulin then filed a third motion to reconsider; that is, he filed what was, by his own characterization, a motion to reconsider a denial of a motion to reconsider a denied motion to reconsider. *Pet'r's Mot. for Recons.* By this point, this case has become something of a Chinese box with each motion fitting inside the other. It is not entirely clear to the Court that the *Gonzalez, Rodwell, Munoz* line of cases applies to a motion that is several layers removed from a self-styled § 2255

order.  Nonetheless, the Court has considered and now addresses Mr. Poulin's most recent claims.

### A.     Rule 59(e)

First, as the Court explained to Mr. Poulin in its order on April 24, 2014, a motion to reconsider under Rule 59(e) is "not a vehicle to force the court to think twice; it is not an opportunity for the losing party simply to press his unsuccessful arguments a second time in the hope that, by repetition, the court will see them his way." *Order on Mot. for Recons*. at 4 (quoting *Widi v. McNeil*, 2:12-cv-00188-JAW, 2014 U.S. Dist. LEXIS 19778, at *3 (D. Me. Feb. 18, 2014)).

The language applies with even greater force to the procedural posture at this point; if a motion to reconsider is not a vehicle to get the court to think twice, it is necessarily not a vehicle to get it to re-think its rulings for a third or fourth time. After all, Rule 59(e) is an "extraordinary remedy" that "should be granted sparingly" and is limited to "(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 490 F. Supp. 2d 184, 187 (D.N.H. 2007) (quoting *Villanueva-Mendez v. Nieves Vazquez*, 360 F. Supp. 2d 320, 324 (D.P.R. 2005)).  Although Mr. Poulin opens with a section on the Rule 59(e) standard of review, he alleges a manifest errors of law or fact on the same bases as those asserted under Rule 60(b). *Rule 59(e) Mot. for Recons*. at 2-9 (ECF No. 338).  The Court addresses his claims under that rubric.

### B.     Rule 60(b)

The Court simply disagrees with Mr. Poulin that his Rule 60(b) motion is procedural and thus a true Rule 60(b) motion. The fact that he characterizes his arguments as merely procedural does not make them so, and the First Circuit directed the district courts to "sift the wheat from chaff without undue difficulty." *Rodwell*, 324 F.3d at 71. The Court concludes that the motion is substantive and is therefore barred as a successive § 2255 petition, one he has filed without permission from the applicable circuit court. One way of looking at this issue is whether Mr. Poulin's current claims were actually raised and addressed in the § 2255 litigation. If so, Mr. Poulin's Rule 60(b) motion is really an attempt to collaterally attack the legality of a prior decision rejecting his earlier collateral attack—the exact situation the AEDPA was enacted to avoid. In the words of the United States Supreme Court, one of the instances where a Rule 60(b) motion would be disallowed as a successive habeas petition would be where the motion "attacks the federal court's previous resolution of a claim *on the merits*." *Gonzalez*, 545 U.S. at 532 (emphasis in original).

Turning to the alleged errors that Mr. Poulin asserted in his Rule 60(b) motion, *Second Mot. for Recons.*, the first claimed error is that the Court relied on a case that was distinguishable; this is plainly an attack on the merits of the Court's prior ruling and violates the successive petition prohibition. Second, Mr. Poulin's claim that the Court failed to address a non-defaulted claim of ineffective assistance of appellate counsel is simply inaccurate. *See Order on Mot. for Recons.* at 79-80 (addressing ineffectiveness claim against appellate counsel).

In his third claim, Mr. Poulin makes much of documents that were missing from the record when the Court decided its April 24, 2014 order. It is true that the Maine Computer Crimes Unit (MCCU) Laboratory made mistakes in the processing of some of the evidence in his case. Seizing on this miscue, Mr. Poulin vigorously pressed—before and after the verdict—the notion that this evidence would have been somehow exculpatory. Mr. Poulin's contention is not new nor is it based on newly discovered evidence.

Mr. Poulin attached complete copies of the three missing exhibits to his motion to reconsider. *Second Mot. for Recons.* Attach. 3 *Me. State Police Computer Crimes Unit Forensic Synopsis* (*Forensic Synopsis*); *id.* Attach. 4 *Aff. of Charles Hurst* (*Hurst Aff.*); *id.* Attach. 5 *Data Spreadsheets*. The Court has reviewed these missing exhibits and has concluded that they change nothing. Although Mr. Poulin says these are "pivotal documents" whose absence left the record "materially incomplete," *Second Mot. for Recons.* at 11-12, it remains hard to understand why the MCCU's mistake would have exonerated Mr. Poulin. What they demonstrate, arguably, is that the MCCU made a mistake in its forensic examination of the Poulin case. Mr. Poulin does not spell out his theories regarding the data spreadsheets, but he does write at length about (1) Pastor Hurt's affidavit and (2) the forensic synopsis. In an effort to explain its ruling to Mr. Poulin, the Court turns to each in turn.

Pastor Hurst's affidavit recounts "what transpired on September 10, 2009 in the federal courthouse"; Pastor Hurst, along with Mr. Poulin and his mother, Catherine Scovill, met with the keeper of the records at the MCCU, who allowed them

13

to peruse the crime lab file pursuant to Attorney Van Dyke's subpoena. *Hurst Aff.* ¶¶ 1-2. They allegedly found "a 'corrective report' that had <u>not</u> been produced" and was dated May 4, 2009, which—unlike the produced report dated May 5, 2009—contained no finding "that offensive imagery had been recovered from a computer." *Id.* 3-4 (emphasis in original).

None of this comes as news to the Court. While it did not have Pastor Hurst's affidavit, *Supporting Decl.* Attach. 1 *Decl. of Lynne Williams*, at 2 (ECF No. 331) (explaining Attorney Williams's failure to properly file Pastor Hurst's affidavit as well as other documents), it did have Mr. Poulin's and Ms. Scovill's affidavits setting forth the same version of events contained in Pastor Hurst's. *Aff. of Catherine Scovill* ¶¶ 3-6 (ECF No. 246); *Aff. of Daniel Poulin* ¶ 32 (ECF No. 236). The Court carefully considered this claim in its April 24, 2014 order. *See Order on Mot. for Recons.* at 22-24, 31-32. Discussing the May 5, 2009 Corrective Report, the Court arrived at the conclusion that the prosecution's decision to forgo MCCU evidence rendered the supposedly falsely inculpatory report harmless:

> The May 5 Corrective Report does indeed contain the statement that one pornographic image of the victim was found on a laptop hard drive. *Van Dyke Aff.* at Ex. P, at 4 (ECF No. 234-3) (*May 5 Corrective Report*). Mr. Poulin and Ms. Scovill both swear that Sgt. Lang admitted to them that the "forensic findings existing in the May 5 report produced to the defense were false" and that he "informed AUSA Malone of this on May 6, 2009." *Poulin Aff.* ¶ 33; *Scovill Aff.* ¶ 10(d). Assuming that the affiants truthfully quote Sgt. Lang, the May 5 Corrective Report was falsely inculpatory as to the one image purportedly located on the laptop hard drive. However, this evidence, like all MCCU evidence, was not introduced at Mr. Poulin's trial.

*Id.* at 31-32.

14

Moreover, to the extent that Mr. Poulin used the alleged May 4, 2009 Corrective Report as fodder for other legal claims, the Court has considered and rejected those claims at length. *Id.* at 39-44 (dispensing with the theory premised on the "inducement" of the defense into an exclusion motion), at 71 (rejecting fraud-on-the-court and substantial-interference theories), at 82 (finding no materiality of assumed discovery violations under *Brady*, *Bagley*, and *Kyles*). In short, the Court is certain that the presence of a third affidavit containing the same alleged facts as were present in two other affidavits then before the Court would have done nothing to change its analysis. That analysis stands.

Mr. Poulin's point with regard to the forensic report is harder to follow. *Second Mot. to Recons.* at 13-15. As far as the Court can tell, he argues that an exculpatory report—the so-called "2007 Media Examination Report"—exists, was suppressed, and continues to be suppressed. *Id.* at 14. The Court addressed the Media Examination Report in its April 24, 2014 order, *Order on Mot. for Recons.* at 19-22, and concluded that "the evidence of the existence and contents of the Media Examination Report is threadbare." *Id.* at 21. The Report and its legal consequence remain something of a mystery to the Court, but it has done its level best to understand Mr. Poulin's argument.

When the Court handed down its April 24, 2014 order, it had the first of two pages of the forensic report. *Id.* at 19-20 (citing *Van Dyke Aff.* Attach. 4 *Forensic Synopsis* (ECF No. 235)). Now it has both pages, *Forensic Synopsis*, and Mr. Poulin tries to tie together the second page of the forensic synopsis with the data

15

spreadsheets. *Second Mot. to Recons.* at 13 ("Although the date is inverted, the information from this *single example* for CD/DVD #1 on the data spreadsheet, discovery page #0279 (*Exhibit* B) matches the information cited as a *single example* for CD/DVD #1 reported on (*Exhibit* T) 'page 2 of 2'"). From there, Mr. Poulin argues that the tie "clearly establishes that the data spreadsheets (*Exhibit* B) were generated by the 2007 Media Examination." *Id.* While the Court acknowledges the similarity between the forensic synopsis and the data spreadsheet, i.e., both indicate a date of August 10, 2003, it simply does not understand how this similarity constitutes proof positive of the Media Examination Report. Nor, despite its best efforts, does the Court understand how the tie renders fallacious its conclusion in the April 24, 2014 order "that Exhibit B [the data spreadsheet][5] describes the creation dates of files on the hard drives seized from Mr. Poulin, not of files on the DVDs." *Order on Mot. for Recons.* at 28; *see Second Mot. for Recons.* at 14 ("This is false") (emphasis in original). Mr. Poulin closes by arguing:

> (Exhibit T) "page 2 of 2" would have conclusively changed the Habeas Court's analysis regarding the exculpatory character of the Media Fraud claim(s). It would have established that AUSA Malone concealed exculpatory Media Examination information (2007 Report) while placing its data spreadsheets into evidence. The Habeas Court discredited this claim because of the non-existence of (Exhibit T "page 2 of 2" erroneously concluding the date spreadsheets were generated by a Hard Drive Examination. *Opinion* 28. The Habeas Court's reliance on this non-fact to make its erroneous factual determination constitutes abuse of discretion. Jensen v. Phillips Screw Co., 546 F.3d 59, 67 (1st Cir. 2008); Bacardi., 719 F.3d 1, 9.

---

[5]   *Poulin Aff.* Attach. 1 *Ex. B Data Sheets* (ECF No. 227).

*Second Mot. for Recons.* at 15. In sum, the Court does not follow Mr. Poulin's logic, but it is not for want of trying. However forcefully Mr. Poulin has expressed himself, the Court—after much serious consideration—can only consider Mr. Poulin's arguments as an analytic black hole.

Regardless, the Court has already observed that when Mr. Poulin's fine defense counsel questioned the accuracy of the MCCU's investigation, the Government promised not to use any of that evidence at his trial, *Gov't's Suppl. Mem. in Opp'n to Def.'s Mot. to Dismiss for Misconduct* (ECF No. 138) ("[T]he Government has agreed not to use at trial any of the evidence generated by the agents at the Computer Crimes Unit"). Moreover, the Government kept its promise at trial, as the Court has been at pains to communicate to Mr. Poulin. *See Order on Mot. for Recons.* at 5, 13, 28, 32, 41, 43 n.14, 44, 48, 70-73, 82 (stating that MCCU evidence was not used at trial). Instead, the Government relied on evidence of Mr. Poulin's elaborate hidden camera studio found in the walls of the bathroom of his residence, Mr. Poulin's own statements virtually confessing to producing sexual images of his girlfriend's daughter, and actual images of the daughter in various states of undress over many of her teen years that were authenticated independently of MCCU. In short, then, Mr. Poulin's arguments miss the mark—whether procedural or substantive, they are immaterial.

Fourth, Mr. Poulin argues that an earlier reconsideration order contained "mischaracterizations and misrepresentations of the record." *Second Mot. for Recons.* at 16. This series of abstruse claims relate back to the Court's April 24, 2014

17

reconsideration order, which addressed the merits of the January 27, 2014 habeas order, which reveals the way in which Mr. Poulin continues to dispute this Court's repeated merits determinations. The Court refuses to revisit these arguments. Moreover, Mr. Poulin's litany of supposed mischaracterizations and misrepresentations mostly relate to MCCU evidence; thus, even assuming they occurred, they are immaterial.

Fifth, Mr. Poulin argues that the same reconsideration order "abused its discretion by refusing to grant an evidentiary hearing." *Second Mot. for Recons.* at 25. Mr. Poulin launches a multifaceted attack:

> [T]he Habeas Court has: (1) read portions of trial counsel's Affidavit out of context; (2) concluded trial counsel's Affidavit was 'inherently incredible and/or inadmissible hearsay;" (3) discounted sworn statements within the Scovill Affidavit; (4) discounted sworn statements within the Poulin Affidavit; (5) discounted and reconstructed noncontested authenticated communications of the United States Attorney; (6) transmogrified Poulin's claims; (7) refused to exercise discretion necessary to correct a known error in the record.

*Id.* at 26; *see also id.* at 26-35 (elaborating on these claims). At bottom, Mr. Poulin argues that the Court should have held an evidentiary hearing—an argument already considered and rejected at length. *Second Mot. for Recons.* at 68-70. Though he seeks to contest the bases on which the Court arrived at its decision, his challenge remains substantive rather than procedural.

Mr. Poulin's last two claims are that "the Habeas Court failed to address the AUSA's malfeasance regarding known perjured testimony," *Second Mot. for Recons.* at 36, and "failed to address the issue that the AUSA lied to the Court about the discovery, correction and origin disclosure of the government's falsified device

18

connection." *Id.* at 37.  The Court dismissed the former argument in its earlier order, *Order on Mot. for Recons.* at 60 n.22, but Mr. Poulin presses his claim that it should have done more—i.e., carried out "an honest comparison between the different portions of the record." *Second Mot. for Recons.* at 36-37.  The Court also addressed the latter argument in its earlier order, *Order on Mot. for Recons.* at 30-31, writing that "Mr. Poulin spins a murky tale of concocting and planting false evidence with his lawyer in order to induce the prosecutor to produce false evidence" and that "[t]he story, to the extent it can be followed, is incredible, and the Court does not credit it." *Id.* at 31 n. 6.  It is evident that Mr. Poulin disagrees with these merits rulings, but again, the Court refuses to revisit them.

This Court has been baffled by Mr. Poulin's post-conviction motions, how angry and accusatory he has been, and how determined he has been to paint himself as somehow wronged by his prosecution, conviction, and sentence.  Based on the evidence at his trial, there was no question but that Mr. Poulin had spent years secretly videotaping his girlfriend's teenage daughter in various states of undress.  Initially capturing shots of her across a bathroom, these images—though an invasion of her privacy—did not constitute the production of child pornography because they did not depict the "lascivious exhibition of the genitals or pubic area".  21 U.S.C. § 2256(2)(A)(v).

Over time, however, Mr. Poulin became more sophisticated.  He built an elaborate studio in the walls of the family bathroom complete with hidden pinpoint

19

cameras, and by the end, he had surreptitiously installed a toilet camera to videotape her going to the bathroom. The images spoke for themselves: they were pornographic.

The only real question at trial was whether the victim was a minor when Mr. Poulin produced images that would meet the statutory definition of child pornography. On this issue, the Government presented a wealth of evidence—independent of the MCCU analysis—that established that his victim was in fact a minor when Mr. Poulin produced images that depicted the lascivious display of her genitals and thereby constituted child pornography within the meaning of federal law. Mr. Poulin's prosecution, conviction, and sentence were solely the results of his own criminal actions. They were not the result of a vengeful prosecutor, a biased judge, or ineffective counsel.

## V.   CONCLUSION

The Court DENIES Daniel Poulin's Rule 59(e) and Rule 60(b) motions for reconsideration of the Court's Order affirming the Recommended Decision of the Magistrate Judge (ECF No. 337, 338). The Court determines that no certificate of appealability should issue pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial issue that could be presented on appeal.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2016